| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>JAMES ANDREW TAPERT | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br>08- **08-2217M** |

Complaint for violation of Title 18, United States Code, Section 2422(b)

| NAME OF MAGISTRATE JUDGE<br>HONORABLE JEFFREY W. JOHNSON | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, CA |
|---|---|---|

| DATE OF OFFENSE | PLACE OF OFFENSE<br>Los Angeles | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

On or about June 16, 2007, in San Luis Obispo County, within the Central District of California, defendant JAMES ANDREW TAPERT knowingly received more than one image of child pornography, as defined in Title 18, United States Code, Section 2256(8)(A) that had been shipped and transported in interstate and foreign commerce by any means, including by computer, and that had been produced using materials that had been mailed and shipped and transported in interstate and foreign commerce by any means, including by computer, knowing that the image was child pornography.

FILED
CLERK, U.S. DISTRICT COURT
SEP 15 2008
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:
(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE:

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge.<br><br>DOUGLAS S. OLIVER | SIGNATURE OF COMPLAINANT<br><br><br>OFFICIAL TITLE SPECIAL AGENT - FEDERAL BUREAU OF INVESTIGATION |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1) | DATE<br>September 15, 2008 |
|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.
JLB:eg          REC: (DETENTION)

## AFFIDAVIT

I Douglas S. Oliver, being duly sworn, hereby depose and say:

### I. INTRODUCTION

1. I have been a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") for ten years and am currently assigned to the Santa Maria Resident Agency ("SMRA") of the Los Angeles Division. I work cases in the area of Violent Crimes/Major Offenders, including those which targets individuals involved in the on-line sexual exploitation of children.

### II. PURPOSE OF THE AFFIDAVIT

2. I make this affidavit in support of a criminal complaint and arrest warrant charging JAMES ANDREW TAPERT with violating Title 18, United States Code, Section 2252A(a)(2) (receipt of child pornography).

3. The statements contained in this affidavit are based upon my investigation, information provided by other FBI agents, other law enforcement officers, other personnel specifically trained in the seizure and analysis of computers and electronic media, and on my experience and training as a Special Agent of the FBI. This affidavit is intended to show that there is sufficient probable cause for the requested criminal complaint and does not purport to set

forth all my knowledge of, or investigation into, this matter.

### III. BRIEF SUMMARY

4. In 2007, TAPERT lived with his girlfriend, and her three-year-old daughter (Victim). In September 2007, Victim told a babysitter that TAPERT had made her perform oral sex on him. The babysitter called the police. In connection with the investigation into TAPERT's molestation of Victim, a search warrant was conducted on TAPERT's computer, and child pornography was found. Also found on TAPERT's computer was an animated video titled "Sex Lessons for Young Girls." That animated video depicted a young girl being taught to perform oral sex on an adult male.

### IV. PROBABLE CAUSE

A. <u>Initial Investigation: TAPERT Is Accused of Molesting a Three-Year Old Girl</u>

5. I have spoken with Detective Suzie Aanerud, Lompoc Police Department ("LPD"). She told me that in September 2007, law enforcement was contacted by Bahija Rashad regarding TAPERT and Victim, who was then three years old. I have reviewed Detective Aanerud's file regarding this investigation, and learned the information contained in Section IV of this affidavit.

6. In October 2007, Victim was living with her mother and TAPERT, whom she referred to as her "daddy." On October 19, 2007, Rashad was babysitting Victim. While reading Victim a story, Victim spontaneously told Rashad that her "daddy" had put his "pee pee" in her mouth. Victim said that something came out of her daddy's pee pee and she didn't like it. Victim also indicated to Rashad that her "daddy" made her rub his penis with her hands.

7. On October 23, 2007, Victim was interviewed by Dr. Anna Kokotovic, a Child Abuse Listening and Mediation expert. I have reviewed a videotape of that interview, and also spoken to Detective Aanerud, who monitored the interview from another room. Among other things, I learned the following:

    a. During the initial portions of the interview, Victim was happy and talkative with Dr. Kokotovic, but when asked about TAPERT, she shut down and refused to communicated.

    b. Victim was shown "happy face" and "sad face" pictures. When asked about her mother, Victim pointed to the happy face. When asked about TAPERT, whom she called "daddy," she pointed to the sad face.

-3-

c. Victim continued to refused to answer questions about TAPERT with Dr. Kokotovic. Eventually, Rashad was brought into the room. Rashad asked Victim to tell her what she didn't want to talk to Dr. Kokotovic about. Victim burined her face in Rashad's lap and again told Rashad that TAPERT had put his "weenie" in her mouth. Victim then told Rashad "That was really hard."

B. **When Asked About Child Pornography, TAPERT Admitted to "Accidentally" Downloading "Stuff"**

8. On October 31, 2007, Detective Aanerud interviewed the Victim's mother. She learned that TAPERT lived with Victim, Victim's mother, and Victim's siblings. She also learned that TAPERT often watched pornography alone in his bedroom. Victim's mother was unsure if this was adult pornography or child pornography, because TAPERT would always quickly turn it off when she walked into the room [1].

9. On November 5, 2007, Detective Aanerud spoke with TAPERT via telephone. He told her that he would not speak with Detective Aanerud in person on the advice of counsel, but he did agree to speak with her over the telephone.

---

[1] Detective Aanerud learned that some time before, Victim's mother's eldest child had been removed from her home and been adopted by another family. This was also due to allegations of molestation, but was before TAPERT lived with them, and the allegations were not related to TAPERT.

During this conversation, Detective Aanerud told TAPERT that she was concerned that he owned and/or viewed child pornography. He denied this, but consent to let Detective Aanerud view and search the contents of his computer.

10. That same day, Detective Aanerud met TAPERT at his residence at 324 North O Street, Lompoc, California. TAPERT read the Lompoc Police Department Consent to Search form, and signed it.

11. Before removing the computer from TAPERT's residence, Detective Aanerud reminded TAPERT that because forensic technician would search the contents of his computer, his honesty was imperative. TAPERT then admitted that while downloading music he had "accidentally" downloaded "some stuff."

12. At first, TAPERT described this "stuff" as bestiality-type scenes involving adults. Detective Aanerud told TAPERT that she did not care about adult pornography, and that she was only concerned with child pornography. TAPERT told Detective Aanerud that while downloading movies and music he had downloaded other "stuff." TAPERT said he had seen partial images that "grossed him out." TAPERT said that upon realizing what the images were, he immediately erased them. TAPERT would not give Detective Aanerud

further information on the images he saw, and suggested that the images were only partially downloaded. TAPERT admitted to attempting to download movies and also receiving "stuff" but claimed he deleted inappropriate images immediately.

13. On November 8, 2007, Detective Aanerud took TAPERT's computer to Deputy John McCammon of the Santa Barbara County Sheriff's Department for a forensic evaluation. During the preliminary review of TAPERT's computer, Deputy McCammon found child pornography on TAPERT's computer.

14. On November 9, 2007, Detective Aanerud spoke with TAPERT via telephone regarding the child pornography found on his computer. TAPERT against claimed that he had only downloaded child pornography "accidentally."

C. **Federal Search Warrant Executed on TAPTERT's Computer; Child Pornography Found**

15. On January 14, 2008, a federal search warrant was executed on TAPERT's computer for evidence of violations of Title 18, United States Code, Section 2252A(a)(2) (receipt of child pornography). A forensic review of the computer determined that child pornography videos were saved in a desktop folder named "MUSIC." These images included the following:

      a.   A video file labeled "Dad gets a handjob from his daughter and her friend - preteen kiddy kiddie incest rape porno porn.mpe " depicts a girl who appears to be approximately 10-13 years old.  The video depicts a closeup of the girl's face she performs oral sex on an adult male.  I have reviewed this file, and believe that it depicts a real child.  Further, based on my training and experience, I am aware that the technology does not currently exist to create computer-generated images of a moving child that are indistinguishable from a real child.  The "file creation" date for this file is June 16, 2007.

      b.   A video file labeled "Lolita - Brasil Pedofilia 12Y - Flagras Big Brother - Bbb - Sexo Hacker Putaria Kids Pedofilia In.mpg " depicts a girl who appears to be approximately 10-13 years old.  The video depicts a closeup of the girl's face and upper body while a hand massages her breasts.  I have reviewed this file, and believe that it depicts a real child.  Further, based on my training and experience, I am aware that the technology does not currently exist to create computer-generated images of a moving child that are indistinguishable from a real child.  The "file creation" date for this file is June 16, 2007.

16. In addition, numerous images of child pornography were found in a folder named "My Completed Downloads." These images are "thumbs.db" files. When child pornography images are viewed using a thumbnail viewer, they may be automatically cached as a thumbs.db file. These thumbs.db files may remain on the computer even if the child pornography is not downloaded from the Internet or is downloaded, but later deleted. The thumbs.db files make it clear that TAPERT was deliberately searching for child pornography on the Internet and either viewing it while connected, without downloading it, or downloading it and later deleting it. The thumbs.db images found on TAPERT's computer include numerous images of pre teenage to early teenage girls engaged in vaginal sex with adults, or spreading their legs wide open to expose their bare vagina.

17. In addition to the child pornography files found on TAPERT'S computer, there was also an animated video file entitled "Sex Lessons for Young Girls." This video provided instructions on teaching a female child to provide oral sex on an adult male. This file was saved in the same desktop folder named "MUSIC," which contained two child pornography video files.

18. Based on a preliminary review of the computer, as well as TAPERT's statement, all of the child pornography was downloaded from the Internet. The Internet is a means of interstate commerce.

## VI. CONCLUSION

19. Based on the facts set forth herein, and based on my training, education, and experience, and participation in this investigation, there is probable cause to believe that JAMES ANDREW TAPERT violated Title 18, United States Code, Section 2252A(a)(2) (receipt of child pornography).

_____
Douglas S. Oliver
Special Agent
Federal Bureau of

SUBSCRIBED TO AND SWORN BEFORE ME
THIS 15TH DAY OF SEPTEMBER 2008

_____
UNITED STATES MAGISTRATE JUDGE